COOK, Justice.
Joseph E. Wilkerson petitions for a writ of mandamus directing the Alabama State Bar to act on his application for admission to the Bar. We grant the petition and issue the writ.
Wilkerson has been a resident of Alabama since 1985 and has owned a business here since 1984. In October 1994, he applied for admission to the Alabama State Bar (“ASB”). In his application, he stated that he had been disbarred in Georgia in 1985.
ASB acknowledged receipt of Wilkerson’s application, and it sent him a “Bar Application Deficiencies” form. The form noted four deficiencies in his application and stated that he had 10 days within which to provide: 1) a passport photograph; 2) supporting affidavits, as required by Rule II.D., Rules Governing Admission to the Alabama State Bar; 3) the date on which he planned to retake the Multistate Professional Responsibility Examination, as required by Rule VI.K., Rules Governing Admission to the Alabama State Bar; and 4) a certificate of good standing from the Georgia State Bar. Wilkerson corrected the first three deficiencies.
With regard to the fourth deficiency, Wilkerson wrote the following letter to the Georgia State Bar and mailed a copy of the letter to ASB:
“I am applying to take the Alabama Bar. In making application I need a letter from the Georgia Bar to the Alabama Bar as to why I was disbarred. In the application they requested a letter of good standing from the previous • bar. I stated I was disbarred for felony shoplifting ... and therefore was not in ' good standing. As I can understand their request they now want a letter from the Georgia Bar confirming that fact.”
ASB’s Committee on Character and Fitness requested that Wilkerson appear at the Committee’s January 1995 meeting. The Committee told him it had questions about his application, and he admitted he had been disbarred in Georgia. When asked if he intended to apply for reinstatement to the Georgia Bar, Wilkerson replied, “I didn’t have any intent until I talked to somebody at this office and he suggested at that time that it might be beneficial to do so.” The chairman of the Committee told Wilkerson, “You have to have a certificate of good standing from any bars of which you’ve ever been a member or of which you are a member. And to get the certificate of good standing, I would think you’d have to go in and be reinstated.”
The Committee members withdrew to discuss Wilkerson’s application. After a short recess, the Committee members returned and the following occurred:
“[Chairman of the Committee]: Mr. Wilkerson, the panel has decided that we can’t approve your application at this time. I don’t want to sit here ... and try to tell you what to do, but we could offer you two different things. We could let you withdraw your application at this time and maybe in the next six months — we sit again in June — •... you could make some closer inquiries into the reinstatement in the State of Georgia. And [another Committee member] was telling me, I didn’t realize, about after a felony conviction, you have to apply for reinstatement of your rights.
“MR. WILKERSON: Right.
[[Image here]]
“[Chairman]: Yes, so you need to do that and to check over [in] Georgia and try to see what you can do there.... Our job is to review the character and fitness of the people who come before us.... And it breaks my heart to be sitting here *546 telling you this, but I think at this point you can either withdraw it or we will disapprove your application, whichever you think. Now, if we disapprove it, you’ll have rights of appeal to the Character and Fitness Appeal Board. ...
“MR. WILKERSON: I’d rather try your approach and that would give me a chance to correct a few things.”
(Transcript of testimony and proceedings before the Character and Fitness Committee of the Alabama State Bar Association, January 11, 1995 (emphasis added).) Wilkerson withdrew his application to take the February 1995 bar examination and paid the required $50 withdrawal fee.
On January 25, 1995, the Georgia State Bar sent ASB a copy of an order stating that Wilkerson had pleaded guilty to shoplifting and that the Georgia State Bar had accepted Wilkerson’s voluntary surrender of his license to practice law — the equivalent of disbarment. Wilkerson says the Georgia Bar told him the order had been sent to ASB and that ASB had agreed to “hold” his application to take the Alabama State Bar examination until he had petitioned for reinstatement to the Georgia State Bar.
The State of Georgia unconditionally pardoned Wilkerson for the offense for which he had been disbarred, and Wilkerson sent a copy of the pardon to ASB. He also sent a letter to ASB explaining that the Georgia State Bar would not issue him a “certifícate of good standing” unless he retook the Georgia bar exam and was readmitted to the Georgia State Bar. This action would require Wilkerson to pay a $3,000 filing fee, to submit 100 recommendation letters from members of the Georgia State Bar, and to personally submit to “several levels of review” before being allowed to take the Georgia bar exam. Wilkerson estimated that the process would take approximately 18 months and would require him to spend a great deal of time in Georgia, away from his business and his family. Wilkerson concluded his letter:
“Since I didn’t wish to practice in Georgia, nor [do I] have the time to go to Georgia and ... locate 100 attorneys interested enough to send letters of approval to the Bar, nor can I afford to waste several thousand [dollars] on fees, I opted for obtaining a Pardon from the state. I hope this is sufficient to explain why I did not obtain a letter of good standing from the Georgia Bar as suggested.”
The executive director of the Alabama State Bar replied, in a letter dated November 13,1996:
“When you appeared before the Character and Fitness Committee of the Alabama State Bar on January 11,1995, the committee made it plain that in order for them to act upon your application to sit for the Alabama bar exam, it was necessary for you to re-establish your membership in good standing with the Georgia Bar. I can appreciate the fact that you might not desire to practice law in Georgia, but since you were admitted to the bar of that state, you must take the necessary steps to be reinstated to the Georgia Bar in order for the character and fitness committee to act further upon your application. I also point out to you that obtaining a certificate of good standing from the Georgia Bar will not automatically clear you to sit for the Alabama bar exam. Your application will still have to be reviewed and considered by the character and fitness committee. It will be their decision as to whether or not you may be permitted to sit for the bar exam.
“I understand that you may not wish to go through the Georgia reinstatement process because of the expense and the time involved. Unfortunately, unless you are reinstated by the Georgia Bar, thereby obtaining a certificate of good standing, we cannot process your appli *547 cation to sit for the bar exam in Alabama.” (Emphasis added.)
(Emphasis added.)
Wilkerson, understanding this letter as the adverse ruling required by Rule V of the Rules Governing Admission to the Alabama State Bar, appealed to the ASB Disciplinary Board.
On December 4, 1996, the executive director wrote to Wilkerson:
“There is no appeal from the requirement that you be reinstated as a member in good standing with the Georgia State Bar. The Character and Fitness Committee pointed out to you that both reinstatement and restitution of your civil rights were prerequisites before it could consider the character and fitness issues involving your felony conviction and subsequent disbarment in Georgia. As I stated in my letter of November 13, obtaining a certifícate of good standing from the Georgia Bar will not automatically clear you to sit for the Alabama bar exam. Your application will still have to be reviewed and considered by the Character and Fitness Committee as to whether or not you will be allowed to sit for the Alabama bar exam. Without a certificate of good standing from the state in which you were originally licensed, there is nothing further we can do.”
Wilkerson petitions for a writ of mandamus ordering ASB to act on his- application “as any other application by having the [Committee on] Character and Fitness to perform their duties as prescribed by the Rules Governing Admission to the Alabama State Bar and [to] render an appeal-able decision.”
Rule V of the Rules Governing Admission to the Alabama State Bar states that the Committee on Character and Fitness was created “[f]or the purpose of determining the fitness, character and qualifications of applicants who desire to be admitted to the practice of law in the State of Alabama.” Rule V goes on to provide:
“The Committee on Character and Fitness is hereby charged with the power, duty, and responsibility of determining the age, and the character and fitness of each applicant for admission to the Bar of Alabama. To that end, the said committee may make such investigation as it sees fit, may require the production before it of any affidavits deemed by it to have any bearing upon these questions, and may require the applicant to appear in person before it and be by it examined. The vote of a majority of the members thereof, if in meeting assembled, shall constitute the action of the said committee....
“The burden is on the applicant to establish to the reasonable satisfaction of a majority of the said committee that the applicant possesses such character and qualifications as to justify the applicant’s admission to the Bar and qualify the applicant to perform the duties of an attorney and counselor at law.
“When, but not until, a majority of the committee is reasonably satisfied as to the applicant’s character and fitness, and that the applicant is of the proper age and possesses the educational qualifications now or hereafter prescribed as provided by law, said committee shall endorse its approval on the said application, and the application and all papers accompanying it shall remain on file in the Secretary’s office.
“From a ruling of the Character and Fitness Committee ... declining to approve the application to take the State Bar Examination or making any finding or ruling adverse to any applicant, an appeal shall lie to the Disciplinary Board of the Alabama State Bar (which, when acting in such capacity, shall be referred to as the ‘Character and Fitness Appeal Board’), if notice of appeal is filed with the Secretary within thirty (30) days after the applicant has been notified of the action of the Character and Fitness Committee. Such appeal shall be heard, de novo, within thirty *548 (30) days after the filing of the notice of appeal or at such time as agreed upon by stipulation between the appellant and the General Counsel. An appeal from a ruling of the Character and Fitness Appeal Board to the Supreme Court of Alabama shall be perfected by filing a notice of appeal with the Clerk of the Supreme Court of Alabama within thirty (30) days after the decision of the Character and Fitness Appeal Board.... ”
(Emphasis added.)
The issue, says Wilkerson, is whether the ASB, through its Committee on Character and Fitness, can refuse to act on an application for admission to the State Bar. We agree with Wilkerson that it cannot.
ASB does not consider Wilkerson’s application to be complete, and it informed him that it would not consider, or make an appealable ruling on, an incomplete application. We note, however, that the Committee gave Wilkerson two options for further action, when the chairman told him: “[Y]ou can either withdraw [your application] or we will disapprove [it], whichever you think. Now, if we disapprove it, you’ll have rights of appeal.... ”
Thus, despite the fact that Wilkerson’s application was deemed incomplete, the Committee would have disapproved it if Wilkerson had not withdrawn it and Wilkerson then would have been entitled to an appeal to the next level of ASB review and, ultimately, to an appeal to this Court if he had suffered a second adverse ruling. Wilkerson, however, took the action he thought the Committee was advising him to take — he withdrew his application and had it placed on “hold” with the ASB so that he could “correct a few things.”
Wilkerson did all that it was possible for him to do in order to comply with ASB’s requirement of providing a certificate of good standing from the Georgia State Bar. Under the facts and circumstances of this case, we conclude that ASB erred in its interpretation of that requirement. Wilkerson sent ASB a copy of an order of the Georgia Supreme Court restoring his civil rights. Wilkerson also had the Georgia State Bar send ASB verification that he had complied with all requirements placed on him at the time of his disbarment. Wilkerson had no further requirements or conditions to meet with regard to the Georgia State Bar.
The Committee has the power to require information pertinent to the issues of an applicant’s character and fitness, and it is reasonable to require a “certificate of good standing” from a state bar association of which an applicant is or was a member. It is not reasonable, however, to interpret the term “certificate in good standing” as being a certificate indicating good standing with, and membership in, another state bar. From the facts before us, we can find no reasonable relationship between Wilkerson’s being readmitted to the practice of law in Georgia and his eligibility to sit for the Alabama bar examination. Thus, when Wilkerson supplied ASB with documentation of his full pardon and the restoration of his civil rights, he had complied with ASB’s requirements for a completed application and he was entitled to have a ruling on it.
We cannot and will not direct the Committee as to how it should rule on Wilkerson’s application. We simply require the Committee to rule on an application that has been completed to the best of the applicant’s ability and has been submitted to it for consideration.
We also call ASB’s attention to the language of Rule V:
“From a ruling of the Character and Fitness Committee ... declining to approve the application to take the State Bar Examination or making any finding or ruling adverse to any applicant, an appeal shall lie to the Disciplinary Board of the Alabama State Bar (which, when acting in such capacity, shall be *549 referred to as the ‘Character and Fitness Appeal Board’).... ”
(Emphasis added.)
We grant Wilkerson’s petition and issue a writ of mandamus directing ASB to consider and rule upon Wilkerson’s application to sit for the Alabama bar examination.
PETITION GRANTED; WRIT ISSUED.
HOOPER, C.J., and MADDOX, SEE, and JOHNSTONE, JJ., concur.
HOUSTON, LYONS, and BROWN, JJ., concur in the result.
ENGLAND, J., dissents.